IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
*Southern Division*

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | * | |
| Plaintiff, | * | |
| v. | * | Criminal No.: 8:17-cr-00514-PWG-1 |
| MARIO ARISTIDES GRANADOS-ALVARADO, | * | |
| Defendant. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

Defendant Mario Granados-Alvardo, a citizen and native of El Salvador, has resided in the United States since 2014. Circuit Court Order 1, Mot. to Dismiss Ex. 1, ECF 45-1. He has neither U.S. citizenship nor lawful permanent resident status. However, since February 24, 2017, he has enjoyed a range of privileges and protections accompanying his status as a "special immigrant juvenile" under 8 U.S.C. § 1101(a)(27)(J).

Granados-Alvarado is presently under indictment on two federal criminal charges: (1) being an illegal alien in possession of a firearm, 18 U.S.C. § 922(g)(5), and (2) possession of a firearm in a school zone, *id.* § 922(q)(2)(A). Here, I address his Motion to Dismiss Count I of the Indictment. Mot. to Dismiss, ECF 45. That count requires the Government to prove, among other things, that Granados-Alvarado was "illegally or unlawfully in the United States" at the time of the alleged firearms offenses. *See* 18 U.S.C. § 922(g)(5)(A). The defense's argument is that Granados-Alvarado's status as a "special immigrant juvenile" (SIJ) shields him from prosecution under 18 U.S.C. § 922(g)(5).

1

I reject Granados-Alvarado's argument. The SIJ program offers aliens a multitude of benefits and protections, including the opportunity to seek lawful permanent resident status. *See* 8 U.S.C. § 1255(h). In and of itself, though, an SIJ designation does not strip the U.S. government of all removal powers. Here, at least, the government retained the power to remove Granados-Alvarado in spite of his SIJ status. *See* 8 U.S.C. § 1182(a)(6) (declaring that aliens who are present in the United States without having been admitted or paroled are "inadmissible" and subject to removal). I conclude, therefore, that Granados-Alvarado's SIJ status does not place him outside the ambit of the federal alien-in-possession-of-a-firearm statute, 18 U.S.C. § 922(g)(5). I further conclude that the rule of lenity does not apply under these circumstances.[1]

## BACKGROUND

On March 6, 2014, the U.S. Department of Homeland Security ("DHS") formally accused Granados-Alvardo, then 15, of unlawfully crossing the U.S.-Mexican border at the Rio Grande River aboard an inflatable raft. DHS Record 1-3, Resp. Ex. 1, ECF 57-1. DHS promptly initiated removal proceedings, Notice to Appear 1-2, Resp. Ex. 2, ECF No. 57-2, alleging Granados-Alvarado was removable under 8 U.S.C. § 1182(a)(6)(A)(i), which authorizes the removal of aliens "present in the United States without being admitted or paroled." Despite this, authorities later released Granados-Alvarado into the custody of his father, who was residing in Silver Spring, Maryland.

While in Maryland, Granados-Alvarado sought protection through the federal SIJ program, which offers relief to young undocumented immigrants who have suffered "abuse, neglect, abandonment," or similar hardships while in their families' care. *See* 8 U.S.C. § 1101(a)(27)(J); *Zheng v. Pogash*, 416 F. Supp. 2d 550, 558 (S.D. Tex. 2006). SIJ status offers

---

[1] The parties fully briefed these issues. *See* Mot. to Dismiss; Resp., ECF No. 57; Reply, ECF No. 63. An in-court hearing was held on October 9, 2018.

2

a range of benefits. For starters, SIJ-designated immigrants are eligible to apply for adjustment of status. *See* 8 U.S.C. § 1255(h) (providing that special immigrants under § 1101(a)(27)(J) "shall be deemed . . . to have been paroled" for purposes of the statutory provisions governing adjustment of status, a form of relief that, under § 1255(a), is generally available to aliens who have been "paroled into the United States"). Beyond that, the statutory regime improves special immigrant juveniles' chances of successfully adjusting their status by lifting a number of restrictions that might otherwise frustrate their applications. *See* § 1255(h)(2) (providing that various grounds of inadmissibility under 8 U.S.C. § 1182(a) "shall not apply" when determining a special immigrant juvenile's admissibility). The regime also casts aside certain grounds for deportation. *See* 8 U.S.C. § 1227(c).

To qualify for SIJ status, an alien must be unmarried and under 21 years old and must have been "declared dependent upon a juvenile court located in the United States in accordance with state law." 8 C.F.R. § 204.11(c)(1)-(3). The court must deem the juvenile eligible for long-term foster care and must determine that "it would not be in the alien's best interest to be returned to the [alien's] country of nationality or last habitual residence." *Id.* § 204.11(c)(4)-(6). Even then, the alien does not enjoy SIJ status unless and until DHS consents to it. 8 U.S.C. § 1101(a)(27)(J)(iii).

In Granados-Alvarado's case, a Montgomery County Circuit Court judge issued the requisite findings for SIJ status on May 6, 2016. Circuit Court Order 1-4. On February 24, 2017, the U.S. Citizenship and Immigration Services ("USCIS") issued a Notice of Action approving Granados-Alvarado's petition for SIJ status. USCIS Notice 1, Resp. Ex. 3, ECF No. 57-3. The Notice states in bold, capital letters: "This notice does not grant any immigration status or benefit." *Id.*

Granados-Alvarado did not wait for USCIS to approve his petition before filing a different form with the agency: a Form I-485 application for adjustment to permanent resident status. Adjustment of Status Form, Resp. Ex. 4, ECF No. 57-4. USCIS marked the form as received on November 1, 2016. *Id.* at 1. The application remains pending.

On May 1, 2017, roughly two months after USCIS confirmed Granados-Alvardo's SIJ status, a traffic stop in Silver Spring resulted in Granados-Alavardo's arrest. A grand jury handed down the two indictments soon afterward.

## STANDARD OF REVIEW

In reviewing a motion to dismiss an indictment, a court must test the indictment "by its sufficiency to charge an offense." *United States v. Sampson*, 371 U.S. 75, 78-79 (1962). "It is perfectly proper, and in fact mandated, that [a] district court dismiss an indictment if the indictment fails to allege facts which constitute a prosecutable offense." *United States v. Cola*, 719 F.2d 1120, 1123 (11th Cir. 1983); *see United States v. Shabbir*, 64 F. Supp. 2d 479, 481 (D. Md. 1999).

## DISCUSSION

Count I of the indictment charges Granados-Alvarado with a violation of 18 U.S.C. § 922(g)(5). This statute makes it unlawful for any "alien" who is "illegally or unlawfully in the United States" to possess a firearm that has traveled in interstate commerce. 18 U.S.C. § 922(g)(5). Granados-Alvarado argues that, because of his SIJ status, he is not "illegally or unlawfully in the United States" within the meaning of § 922(g)(5).

The phrase "illegally or unlawfully in the United States" is nowhere defined in the statute. However, the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") – the agency charged with enforcing § 922 – has promulgated a definition. In 27 C.F.R. § 478.11, the

4

Bureau states that the term "alien illegally or unlawfully in the United States" refers to aliens who are "not in valid immigrant, nonimmigrant or parole status." 27 C.F.R. § 478.11. The regulation goes on to state that this includes "any alien—

> (a) Who unlawfully entered the United States without inspection and authorization by an immigration officer and who has not been paroled into the United States under [8 U.S.C. § 1182(d)(5)] . . .
> (b) Who is a nonimmigrant and whose authorized period of stay has expired or who has violated the terms of the nonimmigrant category in which he or she was admitted;
> (c) Paroled under [8 U.S.C. § 1182(d)(5)] whose authorized period of parole has expired or whose parole status has been terminated; or
> (d) Under an order of deportation, exclusion, or removal, or under an order to depart the United States voluntarily, whether or not he or she has left the United States.

*Id.*

The defense's Motion to Dismiss argues Granados-Alvarado enjoys "parole status" within the meaning of the ATF regulation. It bases this assertion on a provision within Chapter 5 of the Immigration & Nationality Act ("INA"), which states that aliens with SIJ status "shall be deemed, for purposes of [8 U.S.C. § 1255(a)], to have been paroled into the United States." 8 U.S.C. § 1255(h). The defense argues that, as a result of this provision, Granados-Alvarado was effectively "paroled" when he received SIJ status in February 2017. Consequently, the defense contends, Granados-Alvarado was lawfully present in the United States at the time of his offense and was therefore beyond the reach of the federal alien-in-possession-of-a-firearm statute, 18 U.S.C. § 922(g)(5).

A.

The defense's argument raises a question that neither party's filings address at length. That is, how much deference does this Court owe the ATF's definition of "illegally or lawfully

5

in the United States"? This does not appear to be a settled question. *See Whitman v. United States*, 135 S. Ct. 352, 352-53 (2014) (Scalia, J., respecting denial of certiorari) (questioning whether Congress may give executive agencies the power to "resolve ambiguities in criminal legislation"). In fact, among the various appellate courts that have considered whether to defer to ATF's interpretation of the phrase "illegally or unlawfully in the United States," as it appears in § 922(g)(5), conclusions have differed wildly. *Compare United States v. Garcia*, 707 F. App'x 231, 234 (5th Cir. 2017) (holding that ATF's definition merits no deference), *with United States v. Atandi*, 376 F.3d 1186, 1189 (10th Cir. 2004) (declining to decide whether ATF's definition qualifies for full deference under *Chevron v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837 (1984), but opting to accord it "some deference"), and *United States v. Anaya-Acosta*, 629 F.3d 1091, 1094 (9th Cir. 2011) (deferring to the ATF's interpretation and citing to *Chevron*).

The Supreme Court has, on at least one occasion, deferred to an agency's interpretation of a law carrying criminal penalties. In *Babbitt v. Sweet Home Chapter of Communities for a Greater Oregon*, 515 U.S. 687 (1995), the Court held that the Interior Department was entitled to "some degree of deference" in interpreting a provision of the Endangered Species Act. 515 U.S. at 703-04. The landowners and logging companies challenging the Department's regulation had argued the rule of lenity counseled against deference, given that the statute authorized criminal sanctions. *Id.* at 704 n.18. The Court, though, rejected this view, treating the suit as a facial challenge to an administrative regulation and concluding the rule of lenity was inapplicable under the circumstances. *Id.*

In a 2017 decision, *United States v. Garcia*, the Fifth Circuit took the view that a more recent Supreme Court case, *Abramski v. United States*, 134 S. Ct. 2259 (2014), had put the question to rest, "instructing that no deference is owed to agency interpretations of criminal

statutes. *Garcia*, 707 F. App'x at 234. As it happens, the regulation under scrutiny in *Garcia* was the same regulation at issue here – namely, the ATF's construction of the phrase "illegally or unlawfully in the United States" in § 922(g)(5)(A). The Fifth Circuit observed that in *Abramski*, the Supreme Court "declined to show any deference to the ATF's interpretation of 18 U.S.C. § 922 – the statute at issue here." 707 F. App'x at 234. The Fifth Circuit concluded it owed the ATF regulation "no deference," though it allowed it "may still consider the agency's interpretation to the extent it is persuasive." *Id.* at 234 & n.5.

This Court – which, of course, is not bound by the Fifth Circuit's decision – reads *Abramski* differently. There, it is true, the Supreme Court did state that "criminal laws are for courts, not for the Government to construe." 134 S. Ct. at 2274. *Abramski*, though, did not involve an agency regulation. The question there, rather, was whether the Court owed deference to positions the ATF had taken in congressional hearings and publicly issued manuals. *id.*; *see id.* at 2280 (Scalia, J., dissenting) (discussing the firearm statute's enforcement history). The Court concluded it did not. 134 S. Ct. at 2274.

Here, in promulgating a regulation interpreting § 922(g)(5), ATF has exercised authority that Congress expressly delegated. *See* 18 U.S.C. § 926. While there may be reasons to decline to defer to a federal agency's interpretation of a criminal statute, the Supreme Court's decision in *Babbitt* suggests that at least some deference is warranted. I take the view, then, that this Court must accord ATF's regulation interpreting § 922(g)(5) "some degree of deference." *Babbitt*, 515 U.S. at 703. The Court is not bound by it, but it cannot simply sweep the regulation aside.

B.

I turn now to the regulation, which begins: "Aliens who are unlawfully in the United States are not in valid immigrant, nonimmigrant or parole status." 27 C.F.R. § 478.11. The

7

defense would have this Court stop reading there, concluding that any and all forms of "parole status" render an alien lawfully present under § 922(g)(5)(A). The regulation, though, does not stop there. It goes on to state that the term "includes" any alien who falls into one of four enumerated categories. *Id.* Two of those categories refer to parole, and both refer exclusively to a specific form of parole.[2] That form, which is codified in Section 212(d)(5) of the INA, 8 U.S.C. § 1182(d)(5), has no connection to the facts of Granados-Alvarado's case.

INA Section 212(d)(5) grants the Attorney General discretion to temporarily parole an alien into the United States "only on a case-by-case basis for urgent humanitarian reasons or significant public benefit." 8 U.S.C. § 1182(d)(5). Regulations identify five situations that may compel the government to exercise this power: (1) when the alien has a "serious medical condition," (2) when the alien is a pregnant woman, (3) when the alien is a juvenile who may be placed with a relative or other caretaker, (4) when the alien is a witness in judicial, administrative, or legislative proceedings, and (5) when the alien's continued detention "is not in the public interest." 8 C.F.R. § 212.5(b); *see Succar v. Ashcroft*, 394 F.3d 8, 15 (1st Cir. 2005).

The simple, undisputed fact is that the government has not paroled Granados-Alvarado under § 1182(d)(5). That being the case, Granados-Alvarado falls very clearly into the first category of aliens encompassed in ATF's definition of "illegally or unlawfully in the United States." 27 C.F.R. § 478.11. That is, he is an alien "[w]ho unlawfully entered the United States

---

[2] The first category, found in subsection (a), states that the term "alien illegally or unlawfully in the United States" includes an alien "[w]ho unlawfully entered the United States without inspection and authorization by an immigration officer and who has not been paroled into the United States under section 212(d)(5)" of the INA. 27 C.F.R. § 478.11. The other category, found in subsection (c), expands the term to include any alien "[p]aroled under INA section 212(d)(5) whose authorized period of parole has expired or whose parole status has been terminated." *Id.*

8

without inspection and authorization by an immigration officer and who has not been paroled into the United States under section 212(d)(5) of the [INA]."

Accordingly, to the extent this Court owes deference to the ATF's construction of § 922(g)(5), the Court must conclude that Granados-Alvarado was "unlawfully or illegally in the United States" at the time of the alleged offense.

C.

The defense asks the Court to read the ATF's definition more expansively, so as to include not only aliens who have benefitted from other forms of parole, *see Succar*, 394 F.3d at 15 n.7 (cataloguing several different types of parole available under U.S. law), but aliens who, like Granados-Alvarado, have been "deemed" paroled under 8 U.S.C. § 1255(h). I do not find this argument persuasive.

INA Section 245, codified at 8 U.S.C. § 1255, is the section of the INA that authorizes nonimmigrant aliens to apply for an adjustment of status. 8 U.S.C. 1255. Granados-Alvarado calls the Court's attention to subsection (h), which states in relevant part:

> In applying this section to a special immigrant [juvenile] described in section 101(a)(27)(J)—
> (1) such an immigrant shall be deemed, for purposes of subsection (a), to have been paroled into the United States . . . .

*Id.* § 1255(h). Granados-Alvarado argues this provision made him a parolee the moment he acquired SIJ status and that, as a parolee, he was not "illegally or unlawfully in the United States" when the alleged firearm offense occurred. Def.'s Reply 10, ECF No. 63. This argument, though, is not supported by the express language of § 1255(h).

The limited applicability of § 1255(h) is plain to see. First, the subsection addresses itself to the authorities charged with adjudicating applications for an adjustment of status under § 1255, directing officials to abide by the dictates of subsection (h) "[i]n applying this section to"

9

aliens with SIJ status. 8 U.S.C. § 1255(h). The phrase "this section" plainly refers to § 1255, the section governing adjustments of status. This language strongly indicates that § 1255(h) is decidedly narrow, both in its purpose and in its effect.

The subsection goes on to state, in no uncertain terms, that its effect of "deem[ing]" a special immigrant juvenile "to have been paroled into the United States" applies only "for purposes of subsection (a)." *Id.* That is, a special immigrant juvenile is deemed to have been paroled only for purposes of seeking an adjustment of status under § 1255(a).[3]

The defense argues Congress inserted the parole designation in § 1255(h) "as a means of protecting SIJs from abuse, abandonment, and neglect." Def.'s Reply 11. This Court notes, though, that § 1255(h) does not stand alone. Subsection (g), which immediately precedes it, contains identical language deeming another class of special immigrants – those who "served honorably on active duty in the Armed Forces of the United States," 8 U.S.C. § 1101(a)(27)(K) – to "have been paroled" into the United States "for purposes of [adjustment of status]," *id.* § 1255(g).

These provisions serve a practical function. An alien who is already present in the United States and wishes to become a lawful permanent resident has two primary options: he can apply

---

[3] Section 1255(a) provides:

> The status of an alien who was inspected and admitted or paroled into the United States or the status of any other alien having an approved petition for classification as a VAWA self-petitioner may be adjusted by the Attorney General, in his discretion and under such regulations as he may prescribe, to that of an alien lawfully admitted for permanent residence if (1) the alien makes an application for such adjustment, (2) the alien is eligible to receive an immigrant visa and is admissible to the United States for permanent residence, and (3) an immigrant visa is immediately available to him at the time his application is filed.

8 U.S.C. § 1255(a).

for an adjustment of status under § 1255, or he can leave the United States and submit to consular processing. It would seem evident that Congress sought to permit certain special immigrants – specifically, those who have served in the U.S. armed forces, § 1101(a)(27)(k), and juveniles at risk of abuse, neglect, or abandonment, § 1101(a)(27)(J) – to remain in the United States while seeking an adjustment of status. To do so, though, Congress would have to grapple with the express terms of § 1255(a), which make adjustment of status available only to aliens who (1) have been inspected and admitted, (2) have been paroled, or (3) have been classified as a Violence Against Women Act (VAWA) self-petitioner. 8 U.S.C. § 1255(a). These restrictions might well have excluded many, if not most, of the special immigrants Congress aimed to protect. By declaring that these special immigrants "shall be deemed, for purposes of subsection (a), to have been paroled into the United States," Congress cleared the path for these immigrants to begin the process of legalizing their status.

All of this is to say that, in this Court's view, § 1255(h) does not accord Granados-Alvarado parolee status for any purposes other than for his application for adjustment of status. *See Cruz-Gonzalez ex rel. D.M.S.C. v. Kelly*, No. 1605727, 2017 WL 3390234, at *5 (E.D. Pa. Aug. 7, 2017) (characterizing the use of "deemed . . . paroled" in § 1255(h) as a "legal fiction created only to determine whether an alien is eligible for an immigrant visa under § 1255(a)"). It does not make his presence lawful and does not spare him from prosecution under 18 U.S.C. § 922(g)(5).

D.

The defense's Reply Brief puts the ATF's construction of § 922(g)(5) off to the side, urging the Court to take a fresh look at the statutory language itself. As explained above, I believe the Court owes the ATF regulation some degree of deference, but not total deference. I

agree, therefore, that it is entirely proper for the Court to subject the provision to the usual methods of statutory construction.

Generally, a court charged with interpreting statutory text must "look to the phrase's 'ordinary, contemporary, common meaning, absent an indication Congress intended' the statute's language 'to bear some different import.'" *United States v. Abdelshafi*, 592 F.3d 602, 607 (4th Cir. 2010) (quoting *Stephens ex rel. R.E. v. Astrue*, 565 F.3d 131, 137 (4th Cir. 2009)); *United States v. Elrawy*, 448 F.3d 309, 312 (5th Cir. 2006) (stating that the terms used in § 922(g)(5)(A) must be given "their ordinary and natural meanings"). The defense, citing to dictionaries of various kinds, argues the words "illegally" and "unlawfully" in § 922(g)(5) connote that the criminal statute only reaches aliens whose presence in the United States is "forbidden." Def.'s Reply 5.

Granados-Alvarado asserts that the U.S. government entered into a "significant legal relationship" with him when it accorded him SIJ status. *Id.* This status, he notes, accorded him a range of benefits and protections. These include: the opportunity to apply for adjustment of status, 8 U.S.C. § 1255(h); waivers of certain grounds of inadmissibility that would otherwise bar an alien's application for adjustment of status, *id.* § 1255(h)(2); eligibility for special education and child welfare services, *id.* §§ 1232(d)(4)(A), 1522(d); *see Osorio-Martinez v. Attorney Gen. of the U.S.*, 893 F.3d 153, 163 (3d Cir. 2018); and waivers of certain grounds for deportation, 8 U.S.C. § 1227(c). Granados-Alvardo contends that, in conferring all of these rights, SIJ status is best viewed as an "immigration classification" unto itself. Def.'s Reply 1. He argues, accordingly, that special immigrant juveniles "are in fact considered to be 'admitted' into the United States" and therefore lawfully present. *Id.* at 8.

12

There is no question SIJ status confers a wide range of benefits on aliens like Granados-Alvarado. I am not persuaded, though, that Congress intended for the SIJ program to represent an "immigration classification" that would, in and of itself, render a beneficiary's presence in the United States lawful.

I base this conclusion in part on the history of the SIJ program. Today, an alien cannot acquire SIJ status without the executive branch's consent, 8 U.S.C. § 1101(a)(27)(J)(iii), but that was not the case when Congress created the program in 1990. *See Yeboah v. U.S. Dep't of Justice*, 345 F.3d 216, 222 (3d Cir. 2003); My Xuan T. Mai, Note, Children Under the Radar: The Unique Plight of Special Immigrant Juveniles, 12 Barry L. Rev. 241, 246-47 (2009). The Immigration Act of 1990 made SIJ status conditional on the following requirements only: (1) the alien must have been "declared dependent on a juvenile court located in the United States" and have been "deemed eligible by that court for long-term foster care," and (2) there must have been a determination "in administrative or judicial proceedings that it would not be in the alien's best interest to be returned to the alien's or parent's previous country of nationality or country of last habitual residence." Immigration Act of 1990, Pub. L. 101-649, § 153,104 Stat. 4978 (1990). In essence, this empowered state juvenile courts to grant SIJ status without any involvement at all from the executive branch of the United States.

The 1990 Act very clearly deputized local judges to make determinations bearing on an alien's legal rights. This is not necessarily at odds with fundamental principles of federalism. States have an interest in the enforcement (or, perhaps, non-enforcement) of immigration laws. *See Arizona v. United States*, 567 U.S. 387, 298 (2012). For that matter, Congress has recognized state officials' authority "to cooperate with the Attorney General in the identification, apprehension, detention, or removal of aliens no lawfully present in the United States." 8 U.S.C.

§ 1357(g)(1)(B); *see Arizona*, 567 U.S. at 410. Given, though, that the "[p]ower to regulate immigration is unquestionably exclusively a federal power," *United States v. Alabama*, 691 F.3d 1269, 1294 (11th Cir. 2012) (quoting *De Canas v. Bica*, 424 U.S. 351, 354 (1976), *superseded by statute as stated in Chamber of Commerce of U.S. v. Whiting*, 563 U.S. 582 (2011)), it is hard to imagine Congress intended to endow local judges with unfettered authority to legalize an alien's presence in the United States.

Congress amended the SIJ provisions of the INA in 1997. *See* Appropriations Act, Pub. L. 105-119, § 113, 111 Stat. 2440, 2460 (1997). Even now, though, SIJ status does not invariably prevent DHS from declaring an alien removable. Section 237(c) of the INA provides that certain grounds for deportation "shall not apply" to special immigrant juveniles "based upon circumstances that existed before the date the alien was provided such special immigrant status." 8 U.S.C. § 1227(c). Those grounds are: inadmissibility at the time of entry, *id.* § 1227(a)(1)(A); unlawful presence in the United States, *id.* § 1227(a)(1)(B); violation of nonimmigrant status, *id.* § 1227(a)(1)(C); termination of conditional permanent resident status, *id.* § 1227(a)(1)(D); and failure to notify the government of a change of address, *id.* § 1227(a)(3)(A). Certainly, though, there are many other grounds of deportability that SIJ status does not waive. Likewise, while certain grounds of inadmissibility will not bar a special immigrant juvenile's application for adjustment of status, there are many others that will. *See id.* § 1255(h)(2).

Granados-Alvarado's SIJ status plainly expanded his opportunity to seek lawful permanent resident status. Granados-Alvarado took advantage of this opportunity when he submitted an application to adjust his status. In this circuit, though, there can be no question that this act did not in and of itself render him lawfully present for purposes of the criminal statute at issue here, 18 U.S.C. § 922(g)(5). *See United States v. Al Sabahi*, 719 F.3d 305, 310 (4th Cir.

2013) ("[T]he mere filing of an application for adjustment of status and receipt of an employment authorization card does not legalize the alien's presence in the United States, and it is still a crime, under § 922(g)(5), for that individual to possess a firearm." (quoting *United States v. Cavillo-Rojas*, 510 F. App'x 238, 249 (4th Cir. 2013))).

The defense calls this Court's attention to the Ninth Circuit's decision in *Garcia v. Holder*, 659 F.3d 1261 (9th Cir. 2011), arguing that case stands for the proposition that SIJ designees "are in fact considered to be 'admitted' into the United States." Def.'s Reply 8. That, however, is not an accurate characterization of the Ninth Circuit's holding. The question in *Garcia* was whether an alien, by virtue of his SIJ status, was eligible for cancellation of removal under 8 U.S.C. § 1229b(a)(2). 659 F.3d at 1267. That form of relief is available to aliens who, among other things, have lived in the United States continuously for seven years "after having been admitted in any status." 8 U.S.C. § 1229b(a)(2). The Ninth Circuit observed that courts have construed the term "admitted in any status" as "broader than the statutorily-defined term 'admitted.'" 659 F.3d at 1267. The court concluded that the SIJ program fell within this expanded category of admission because it accorded recipients "strong claims to remain in this country." *Id.* at 1271.

The question presented here is different. Granados-Alvarado does not seek relief from removal. He seeks a judicial determination exempting him from prosecution under a criminal statute. That statute does not hinge on a finding that he falls within the broad category of aliens who have been admitted "in any status." What matters, rather, is whether he was "illegally or unlawfully in the United States."

The defense asks the Court to read *Garcia* in conjunction with the Third Circuit's recent decision in *Osorio-Martinez v. Attorney General of the United States of America*, 893 F.3d 153

15

(3d Cir. 2018), suggesting this case also supports the proposition that SIJ status is tantamount to an admission into the United States. *See* Def.'s Reply 7-8. *Osorio-Martinez* considered whether the INA violated the U.S. Constitution's Suspension Clause, U.S. Const. art. I, § 9, cl. 2, in stripping federal courts of jurisdiction to review SIJ designees' challenges to orders for their expedited removal from the United States. 893 F.3d at 166. The Third Circuit held the SIJ designees were entitled to invoke the Suspension Clause because their SIJ status "reflects [their] significant ties to this country and Congress's determination that such aliens should be accorded important statutory and procedural protections." *Id.* at 167. Critically, when the Government sought to emphasize "what it perceive[d] as the gulf between a lawful permanent resident and a SIJ designee," the Third Circuit dismissed the point as "neither here nor there." *Id.* at 175. These facts, the court explained, did not bear on the question at issue – namely, whether the aliens were entitled to habeas review. *Id.* Here, by contrast, where the question is whether Granados-Alvarado was "illegally or unlawfully in the United States" at the time of his arrest, the "gulf" is not at all beside the point.

Granados-Alvarado cites to two other cases where the court concluded that an SIJ designee was not "illegally or unlawfully in the United States" under § 922(g)(5). Those cases are *United States v. Santiago-Hernandez*, 113 F. Supp. 3d 966 (W.D. Mich. 2015), and *United States v. Garcia*, 707 F. App'x 231 (5th Cir. 2017). In each of those cases, though, the court concluded the rule of lenity tipped the scales in the alien's favor. *See Garcia*, 707 F. App'x at 235; *Santiago-Hernandez*, 113 F.3d at 970. As I will explain, I do not view the rule of lenity as applicable here, and therefore the conclusions offered by these courts offer little assistance.[4]

---

[4] It appears the parties in *Santiago-Hernandez* did not brief the issue as fulsomely as Granados-Alvarado and the Government have here, perhaps because the case law was less well developed at the time. *See Santiago-Hernandez*, 113 F. Supp. 3d at 970 (noting that the parties "have

E.

It is a "familiar principle that 'ambiguity concerning the ambit of criminal statutes should be resolved in favor of lenity.'" *Skilling v. United States*, 561 U.S. 358, 410 (2010) (quoting *Cleveland v. United States*, 531 U.S. 12, 25 (2000)). The Supreme Court has made clear, though, that the rule does not come into play except in highly particular circumstances. "The rule, as [the Supreme Court] has repeatedly emphasized, applies only if 'after considering text, structure, history and purpose, there remains a grievous ambiguity or uncertainty in the statute such that the Court must simply guess as to what Congress intended.'" *Abramski*, 134 S. Ct. at 2272 n.10. The "grievous ambiguity or uncertainty" must persist "even after a court has seized everything from which aid can be derived." *United States v. Serafini*, 826 F.3d 146, 151 (4th Cir. 2016) (alteration omitted).

In *United States v. Garcia*, which presented the same question at issue here, the Fifth Circuit concluded that "[a] good argument can be made that Congress did not intend to insulate otherwise unlawfully present aliens with SIJ status from criminal prosecution under § 922(g)(5)(A)." 707 F. App'x at 235. The Fifth Circuit noted, though, that it had previously applied the rule of lenity in an "analogous" case considering whether an alien could be prosecuted under § 922(g)(5) in spite of his temporary protected status under 8 U.S.C. § 1254a. *Id.* (citing *United States v. Orellana*, 405 F.3d 360 (5th Cir. 2005)). The court concluded that the precedential case had created "at least enough ambiguity that the rule of lenity should apply." *Id.*

---

identified no cases that address this particular issue" and that the court was unable to identify "any such cases independently"). The *Santiago-Hernandez* court ultimately concluded that the criminal defendant in that case was not within the scope of § 922(g)(5) because his SIJ designation operated as a form of parole. *Id.* This Court, having had the benefit of comprehensive briefing on the statutory framework and applicable case law, reaches a different conclusion.

17

The *Garcia* court's rationale does not apply here. As far as this Court is aware, there are no precedents in this circuit that might create an ambiguity of the kind that compelled the Fifth Circuit to apply the rule of lenity.

I do not deny § 922(g)(5) could be clearer. Virtually any statute that draws meaning from U.S. immigration laws cannot help but be complex. As outlined above, though, I have examined the statutory text and the nature of the SIJ program. Having done so, I do not find the phrase "illegally or unlawfully in the United States" to be so grievously ambiguous or uncertain that I can do no better than guess at its meaning. Congress has authorized the Government to prosecute the unlawful possession of firearms by an alien. The rule of lenity, in my view, does not empower this Court to bar the prosecution from proceeding in this case.

## CONCLUSION

The statute at issue in this case is a criminal statute. It invokes the language of immigration law, but it remains, at bottom, a public safety statute. In enacting § 922(g)(5), Congress gave law enforcement an additional tool to crack down on gun trafficking and prevent gun violence. While Congress undoubtedly intended for the SIJ program to help certain young immigrants legalize their status, it is highly unlikely Congress also intended to permit those immigrants to arm themselves with lethal weapons during the process.

The defense's motion to dismiss Count I of the indictment is DENIED.

Date: October 16, 2018

Paul W. Grimm
United States District Judge